UNITED STATES DISTRICT COURT
COURT OF MASSACHUSETTS

| | |
|---|---|
| RAYMOND SMITH,<br><br>    Plaintiff<br><br>V.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUM GROUP, AND AGM MARINE CONTRACTORS, INC. GROUP INSURANCE PLAN<br><br>    Defendants | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Raymond Smith ("Mr. Smith") brings this action against the Defendants, Unum Life Insurance Company of America and Unum Group (collectively "Unum") and AGM Marine Contractors, Inc. Group Insurance Plan (the "Plan") (collectively referred to as "Defendants") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et. seq.* ("ERISA"). Mr. Smith is a participant in an ERISA welfare benefit plan insured and administered by Unum.

2. Mr. Smith is filing this action to recover long-term disability ("LTD") benefits due to him under the Plan, to enforce the present rights existing under the Plan, and to clarify rights under the terms of the Plan. Mr. Smith also seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g) and 12% prejudgment interest pursuant to Massachusetts law.

3. Mr. Smith challenges the Defendants': 1) unreasonable and unlawful termination of Mr. Smith's long-term disability ("LTD") benefits despite the substantial medical and

vocational evidence demonstrating Mr. Smith's qualifications for said benefits, 2) repeated pattern of rejecting and/or ignoring the substantial evidence supporting Mr. Smith's disability in an effort to limit Defendants' financial exposure for Mr. Smith's claim; 3) failure to provide Mr. Smith with a full and fair review of his claim, including repeatedly ignoring information supporting Mr. Smith's entitlement to benefits, as well as terminating his benefits despite the lack of improvement in his condition; 4) failure to conduct a reasonable review of Mr. Smith's occupation;  and5) failure to provide a reasonable claims procedure that would yield an impartial decision on the merits of Mr. Smith's claim.

## JURISDICTION

4. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"), in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of group long-term disability insurance plan underwritten by Unum for the benefit of employees of AGM Marine Contractors, Inc, which includes Mr. Smith.

5. Additionally, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

6. ERISA provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

7. Venue is proper in this district as Mr. Smith participated in the employee benefit plan at issue within this district, many of the events and occurrences relevant to this matter

occurred within this district, and the Defendants conduct business in this district. 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## PARTIES

8. Mr. Smith is a resident of Portsmouth, Rhode Island. Mr. Smith is a vested participant in an Unum employee benefit plan, within the meaning of 29 U.S.C. § 1002(2) (7). Mr. Smith has standing to bring this action under 29 U.S.C. § 1132(a).

9. The Defendant, Unum Life Insurance Company of America, is a for-profit corporation with its principal place of business at 2211 Congress Street, Portland, ME 04122. Unum Life Insurance Company of America transacts business in Massachusetts and insures and underwrites the Plan under which Mr. Smith is suing. Unum Life Insurance Company of America is both the party responsible for processing claims under the Plan and making a final determination as to Plan participants' eligibility for disability benefits. At the time Mr. Smith's disability benefits were denied and terminated, Unum Life Insurance Company of America funded and administered the Plan.

10. The Defendant, Unum Group, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. Unum Group is the parent company of Unum Life Insurance Company of America. Unum Group transacts business in Massachusetts. Unum controls the activities of its subsidiaries, including Unum Life Insurance Company of America, under a General Services Agreement and other documents governing the operation of its subsidiaries. All individuals who conduct the business of Unum Life Insurance Company of America are employed by Unum Group.

11. At all times relevant to the claims asserted in this Complaint, Unum purported to act as an ERISA claims fiduciary with respect to participants of the plan generally, and specifically with respect to Mr. Smith, within the meaning of ERISA.

12. The Plan under which Mr. Smith is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1002(1). The Plan was issued to AGM Marine Contractors, Inc., a company based in New Bedford, Massachusetts. Mr. Smith was an employee of AGM Marine Contractors, Inc.

## STATEMENT OF FACTS

**Relevant Plan Terms.**

13. As an employee of AGM Marine Contractors, Inc, Mr. Smith was eligible for LTD insurance coverage under a contract of insurance with Unum.

14. The Plan is insured and administered by Unum.

15. The Plan contains a narrow definition of disability Mr. Smith must meet to prove his eligibility for benefits:

    You are disabled when Unum determines that:
    - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your sickness or injury; and
    - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

16. As a result of the functional limitations imposed by his illness, Mr. Smith has met his burden of proving he is unable to perform the material and substantial duties of his regular occupation, as defined under the Plan, on a part- or full-time basis.

17. Mr. Smith has met his burden of proving that he meets the Plan definition of disability and is therefore eligible for LTD benefits under the terms of the Plan.

18. Neither the Plan, nor Unum has any administrative processes or safeguards (as those terms are used in 29 C.F.R. § 2560.503-1) in place to ensure and to verify appropriately consistent decision making.

19. The Plan does not confer discretion on Unum to determine eligibility for benefits or to interpret the terms of the Plan.

**The Regulatory Settlement Agreement**

20. Unum's financial interest as the payor of Mr. Smith's benefits and the party responsible for determining his eligibility for benefits infected its decision to terminate Mr. Smith's disability benefits, and its handling of Mr. Smith's claim.

21. Unum's history of bad faith claims handling is set forth in a law review article by the leading ERISA scholar, John H. Langbein, Sterling Professor of Law, Yale University, *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials under ERISA*, 101 Northwestern Univ. Law Review 1315 (2007).

22. The United States District Court for the District of Massachusetts recently held in an ERISA long-term disability case "that Unum acted in bad faith, and not as a true fiduciary" concluding "Unum is demonstrably unable to exercise its discretion honestly and fairly." *Host v. First Unum Life Ins. Co.*, 569 F. Supp.3d 48, 59-60 (D. Mass. 2021).

23. On October 18, 2004, a Regulatory Settlement Agreement ("RSA") (a true copy of which is attached as Exhibit A and incorporated by reference hereto) was entered into between Unum and the insurance regulators of 47 states as well as the United States Department of Labor. California and a few other states entered into separate agreements with Unum.

24. The RSA was precipitated by investigations by Massachusetts insurance regulators and regulators of other states, which resulted in a Plan of Corrective Action.

25. The RSA was intended to benefit over 200,000 claims that were denied or terminated between January 1, 2000 and January 1, 2005.

26. In addition, the RSA obligated Unum to improve its claims handling practices in an attempt to eliminate the biased denial and termination of disability claims.

27. "The RSA required Unum to reassess approximately 200,000 long-term disability claims that had previously been denied, as well as to restructure its claim handling procedures to ensure objectivity and fairness." *McManus v. D.C.*, 530 F. Supp. 2d 46, 58 (D.D.C. 2007).

28. The RSA contains specific promises unambiguously intended to benefit individuals submitting claims under Unum policies. Among those promises, Unum pledged to give significant weight to the conclusions of attending physicians made within their area of competence. Unum's agreement was articulated as follows:

    Giving significant weight to an attending physician's ("AP") opinion, if the AP is properly licensed and the claimed medical condition falls within the AP's customary area of practice, unless the AP's opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record. In order for an AP's opinion to be rejected, the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.

29. Unum may only reject the "AP's opinion" when "the claim file...include[s] specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record." *Dwyer v. Unum Life Ins. Co. of Am.*, 548 F. Supp.3d 468, 473 (E.D. Pa. 2021).

30. Unum's agreement to give significant weight to the opinions of treating physicians is codified into Unum's internal guidelines. Exhibit B.

31. Unum failed to rebut, or in any reasonable manner, distinguish its conclusions from the conclusions of Mr. Smith's treating physicians.

32. Unum failed to abide by the terms of the RSA when it reviewed Mr. Smith's claim.

33. Unum's failure to adhere to the terms of the RSA is evidence of Unum's bad faith denial of Mr. Smith's claim.

34. The Court must apply the RSA standard to its review of Unum's decision to terminate Mr. Smith's benefits.

**Defendants' Conflict of Interest**

35. Unum's financial conflict of interest as the payor of Mr. Smith's benefits infected its decision to terminate Mr. Smith's claim for LTD benefits, and its handling of Mr. Smith's claim.

36. Unum's conflict of interest is exemplified, in part, by the following: 1) its reliance on biased Unum physicians and medical directors, Dr. James Bress and Dr. Zachary Gross, to justify its original denial of Mr. Smith's benefits; 2) its reliance on biased physicians, Dr. Anup Sanghvi, to justify its termination of Mr. Smith's claim; 3) its denial of Mr. Smith's claim despite the lack of improvement in his condition; 4) its deference to its own record reviewing physicians to uphold the termination of Mr. Smith's benefits in violation of its own internal guidelines, while unreasonably dismissing the opinions of Mr. Smith's treating physicians whose opinions were supported by and consistent with an independent Functional Capacity Evaluations ("FCE"); 5) its dismissal of the evidence submitted by Mr. Smith in support of his claim; 6) its failure to address the vocational evaluations of Mr. Smith's claim even though the standard of disability is based on his inability to perform the duties of his own regular occupation; 7) its failure to conduct an independent review of all the evidence in the record, but rather to defer, entirely, upon the decisions of its reviewing physicians.

37. Defendants failed to "conduct[] [themselves] as a true fiduciary attempting to fairly decide a claim, letting the chips fall as they may[]" in its review of Mr. Smith's claim. *Lavery v. Restoration Hardware Long Term Disability Benefits Plan*, 937 F.3d 71, 79 (1st Cir. 2019).

**Mr. Smith's Claim for LTD Benefits.**

38. Mr. Smith's last day of work at AGM Marine Contractors, Inc was June 24, 2021.

39. Mr. Smith ceased working because his medical condition resulted in symptoms that functionally limited his ability to perform on a part- or full-time basis, the material and substantial duties of his regular occupation.

40. Mr. Smith provided the Defendants with timely notice of his claim, effective June 24, 2021.

41. On December 2, 2021, the Defendants denied Mr. Smith's claim for benefits, dismissing the functional limitations imposed by Mr. Smith's symptoms and their impact on his regular occupation.

42. Unum determined that Mr. Smith had not demonstrated that he was disabled during the Plan's elimination period June 24, 2021 through October 4, 2021. Unum stated: "The Long-Term Disability benefit payments have not been approved as we have determined you are not precluded from being able to perform your regular occupation as of June 24, 2023 through September 21, 2021 and beyond. Because you do not meet the definition of disability per your policy, your claim has been closed with no benefits payable."

43. Unum's assertion that Mr. Smith was not disabled was unreasonable and unsupported by the substantial evidence in Unum's possession.

44. Following the denial of his claim, counsel for Mr. Smith wrote the Defendants requesting a copy of Mr. Smith's claim file, including the Defendants' internal reviews, so Mr. Smith could effectively respond to the basis of the Defendants' denial of his claim for benefits.

45. On October 12, 2022, Mr. Smith appealed Unum's December 2, 2021 decision to deny his benefits.

46. As part of his appeal, Mr. Smith submitted medical records, reports from his treating physicians documenting his ongoing functional limitations due to his illness, as well as independent functional capacity testing and an independent vocational report.

47. On January 27, 2023, Unum determined that Mr. Smith was eligible for benefits for the period of June 24, 2021 through October 4, 2021, but terminated his benefits effective October 5, 2021, based on a paper review completed by Dr. Sanghvi, a doctor who neither examined nor spoke with Dr. Smith.

48. Although Unum's original decision that Mr. Smith was not disabled during the Plan's elimination period of June 24, 2021 through September 21, 2021 was subsequently overturned by its January 27, 2023 appeal decision, Unum did not allow Mr. Smith an opportunity to appeal its new determination that Mr. Smith was not disabled beyond October 5, 2021.

49. Unum did not complete an additional medical review after Dr. Sanghvi found Mr. Smith to have met the elimination period, despite the fact that his opinion contradicted the opinion of Unum's initial peer reviewers, Drs. Bress and Gross.

50. Unum did not attempt to speak with Mr. Smith's treating providers, Drs. Mushtaque Chachar and Julie DeLeo to discuss Mr. Smith's medical condition beyond October 4, 2021.

51. The Defendants have never acknowledged the fundamental errors in their review of Mr. Smith's claim, and in particular, its failure to recognize the relevancy of the FCE conducted

on April 19, 2022, which found Mr. Smith to be functionally limited from performing the duties of his own or any occupation.

52. Courts have repeatedly held that FCE findings provide objective proof of a claimant's functional ability. *See e.g.*, *Gannon v. Metropolitan Life Ins. Co.,* 360 F.3d 211, 213 (1st Cir. 2004).

53. As Judge Richard Stearns of the United States District Court for the District of Massachusetts, noted in *Martin v. Polaroid Corporation Long Term Disability Plan,*

> While it is true ... that a claimant bears the burden of proving disability, ... the claims process is not an adversarial one, but a collaborative effort on the part of the claimant and the plan administrator, the ultimate goal of which is not to trick a claimant out of benefits that [s]he deserves because of a failure on her part to square every corner, but to achieve a result that is fair to both the claimant and the Plan.

*Martin v. Polaroid Corporation Long Term Disability Plan*, 2004 WL 1305661 At * (May 27, 2004).

54. Defendants' review of Mr. Smith's claim was adversarial in nature.

55. Defendants could have requested Mr. Smith undergo a medical examination with a doctor of its choosing, as permitted by the terms of the Plan, but did not do so.

56. Defendants' final determination letter relied exclusively on Dr. Anup Sanghvi's medical review to uphold the termination of Mr. Smith's claim, ignoring the evidence submitted by Mr. Smith's treating physicians, the independent FCE, the independent vocational evaluations, the requirements of Mr. Smith's regular occupation, the supportive documentation submitted by Mr. Smith's employer, and Mr. Smith's clinical evaluations.

57. The Massachusetts Board of Registration in Medicine's regulations, specifically, 243 CMR 2.01, require physicians conducting an in-person or paper review of an individual seeking disability benefits to have a full license to practice medicine in Massachusetts.

58. Dr. Sanghvi holds a license to practice medicine in Texas. He is not affiliated with any hospital, does not appear to take health insurance, and his practice address is the same address used by a UPS store.

59. Dr. Sanghvi is not licensed to practice medicine in Massachusetts.

60. Dr. Bress is a family medicine doctor. Dr. Bress is licensed to practice medicine in New Hampshire.

61. Dr. Bress is not licensed to practice medicine in Massachusetts.

62. Dr. Gross is the only doctor retained by Unum to review Mr. Smith's claim who is licensed to practice medicine in Massachusetts.

63. 243 CMR 2.01 is not preempted by ERISA.

64. 243 CMR 2.01 does not contradict ERISA's implementing regulations.

**Summary of Defendants' Review of Mr. Smith's Claim for Benefits.**

65. Mr. Smith has exhausted his administrative remedies pursuant to C.F.R. § 2560.503-1(1).

66. Mr. Smith's disability and eligibility for LTD benefits is based on the substantial evidence in Defendants' possession.

67. Mr. Smith's condition had not changed, nor had it improved, at the time Defendants terminated his claim for benefits.

68. Since the date of onset of his disability, Mr. Smith has been and remains unable to perform the material and substantial duties of his regular occupation due to his impairments. Since his impairments are chronic and have not improved in any material respect despite extensive workups and diagnostic testing, there does not appear to be any reasonable medical likelihood of medical improvement at any time prior to the expiration date of the Regular Occupation period. As a result, Mr. Smith is entitled to the reinstatement of his

benefits with payment of all benefits in arrears with 12% interest, along with continuation of payments so long as he meets the Plan definition of "disabled".

69. The Defendants and their medical reviewers arbitrarily dismissed Mr. Smith's symptoms and functional limitations when they determined that Mr. Smith was not disabled.

70. The Defendants failed to have Mr. Smith's claims assessed by a medical provider with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

71. The Defendants failed to address or evaluate the clinical findings of Mr. Smith's treating and evaluating physicians regarding Mr. Smith's symptoms, restrictions, functional limitations, and disability.

72. The Defendants' reviewers' opinions should be afforded little weight as, upon information and belief, they failed to consider all the evidence, medical or otherwise, were selective in the medical information that they relied upon, were unreasonable in their conclusions, and failed to provide a fair analysis of Mr. Smith's claim.

73. The Defendants failed to address or evaluate the clinical findings of Mr. Smith's treating and evaluating physicians regarding Ms. Smith's symptoms, restriction, functional limitations and disability.

74. The Defendants repeatedly and unreasonably dismissed Mr. Smith's symptoms.

75. The Defendants failed to conduct a reasonable vocational review of Mr. Smith's ability to perform the material and substantial duties of his regular occupation, as required by the terms of the Plan.

76. The Defendants failed to address Mr. Smith's vocational review in its final determination letter, in violation of ERISA's implementing regulations.

77. The Defendants unsupported dismissal of the opinions of Mr. Smith's treating providers along with its failure to properly address the vocational assessments of Mr. Smith's claim demonstrate a biased review process.

78. The only evaluators to question Mr. Smith's veracity were Defendants' file reviewing doctors, none of whom examined or spoke to Mr. Smith or his treatment providers. While Defendants are permitted to defer to the opinions of their reviewing physicians, Unum's internal guidelines, based on the terms of the RSA, require Defendants' unquestioned reliance upon their opinions despite their lack of experience with his illness, their reliance on proven false information, and their failure to consider all the evidence in the record, was unreasonable, particularly in light of the independent evaluations supporting Mr. Smith's disability. Moreover, when the reviewing doctors' opinions are factored in with Defendants' failure to address the vocational assessments of Mr. Smith's claim, and its unsupported dismissal of the opinions of Mr. Smith's treating providers, the only conclusion to be drawn is that Defendants' decision was arbitrary and capricious and wrong.

79. By refusing to engage with information Defendants acknowledged was required to complete its review, *i.e.*, evidence Mr. Smith's symptoms impacted his functionality, Defendants proved that their financial conflict of interest impacted their decision to deny and terminate Mr. Smith's benefits and was unreasonable. *See Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos.* 935 F.Supp. 2d 278. 293 (D.Mass. 2013) (an "administrator cannot simply ignore contrary evidence, or engage with only that evidence which supports his conclusion.").

80. The Defendants failed to meet the minimum requirements for the termination of Mr. Smith's LTD benefits, in violation of ERISA, 29 U.S.C. 1133 which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

81. Defendants failed to meet the notice requirements required by ERISA's implementing regulations. Defendants' adverse determination letters failed to articulate the basis for the decision to deny benefits, failed to contain a full discussion of why Mr. Smith's claim was denied and terminated, failed to detail the standard behind the decision.

82. The Defendants failed to meet the Plan's requirements for review of claims that have been terminated.

83. The Defendants failed to provide Mr. Smith with a full and fair review of his claim for LTD benefits.

84. The Defendants failed to respond to Mr. Smith's attempts to engage in meaningful dialogue regarding the evaluation of his claim for LTD benefits.

85. The Defendants failed to engage with the objective evidence supporting Mr. Smith's disability.

86. The Defendants routinely ignored communications from Mr. Smith regarding his claim for LTD benefits.

87. The Defendants failed to engage with the objective evidence supporting Mr. Smith's disability.

88. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by its failure to provide Mr. Smith with an explanation as to its adverse actions as proscribed by ERISA and its implementing regulations.

89. Any discretion to which Defendants may claim they are entitled under the terms of the Plan is negated by its failure to provide Mr. Smith with a full and fair review of his claim.

90. The Defendants failed to disclose all the internal guidance available to claims representatives in evaluating Mr. Smith's claims despite Mr. Smith's request for this information, and despite ERISA's implementing regulations' requirement to disclose this information.

91. The decision to deny and to terminate Mr. Smith's LTD benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan, and contrary to law.

92. The Defendants were influenced by their financial conflict of interest when they terminated Mr. Smith's LTD benefits and failed to provide him with the full and fair review of his claims required by law.

93. Due to the unlawful denial and termination of benefits under ERISA, Mr. Smith has lost his rightful LTD benefits. He has also suffered emotional and financial distress as a result of the Defendants' actions.

94. As a result of the denial and termination of his claim for LTD benefits, Mr. Smith has lost the use of his LTD benefits.

95. Mr. Smith is entitled to restitution for the loss of his benefits at the Massachusetts statutory 12% interest rate.

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### (ALL DEFENDANTS)

96. Mr. Smith realleges each of the paragraphs above as if fully set forth herein.

97. The LTD Plan is a contract.

98. Mr. Smith has performed all his obligations under the contract.

99. 29 U.S.C. § 1132(a) states that:

    (B) A civil action may be brought---

    1.  by a participant or beneficiary –

        A. for the relief provided for in subsection (c) of this section, or

        B. to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

100. Mr. Smith's first claim is for breach of contract.

101. Mr. Smith entered into a valid contract with the Defendants for the provision of disability insurance, in the event he required such insurance.

102. Mr. Smith fulfilled the terms of the contract by remitting premium payments on a monthly basis, as required under the terms of the policies.

103. Mr. Smith met all the conditions for the payment of disability insurance benefits under the policies, including but not limited to, providing the Defendants with proof of his disability under the terms of the insurance contract. Nonetheless, the Defendants have failed to provide Mr. Smith with the benefits he is due under the terms of the contract.

104. The Defendants, by denying Mr. Smith's claim despite the voluminous evidence supporting Mr. Smith's disability under the terms of the policy, has breached its duties and obligations under its contract with Mr. Smith, resulting in monetary injury to Mr. Smith.

105. Mr. Smith has been damaged by reason of the Defendants' breach of contract and is entitled to recover from the Defendants his past and future disability benefits, as well as reimbursement of premiums paid under the policies.

## SECOND CAUSE OF ACTION
### (Attorney's Fees and Costs)
### (ALL DEFENDANTS)

106. Mr. Smith realleges each of the paragraphs above as if fully set forth herein.

107. Under the standards applicable to ERISA, Mr. Smith deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

108. Defendants have the ability to satisfy the award.

109. Mr. Smith's conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

110. Mr. Smith's conduct of this action is in the interests of individuals participating in ERISA plans where the plan administrators have violated ERISA's implementing regulations for their own financial benefit.

111. Mr. Smith's conduct of this action is in the interests of all individuals who lack the financial ability to pursue their claims for benefits as a result of the denial of their disability benefits.

112. The Defendants have acted in bad faith in denying Mr. Smith's disability benefits under the Plan.

113.   The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge, and decree that Mr. Smith is entitled to retroactive and ongoing disability benefits as calculated under the terms of the Plan.

(2)   Award Mr. Smith disability benefits and 12% interest from the dates of the Defendants' breach of contract.

(3)   Declare, adjudge, and decree Mr. Smith was entitled to LTD benefits to which he is entitled as a disabled individual under the terms of the Plan.

(3)   Order that the Defendants make restitution to Mr. Smith in the amount of all losses sustained by Mr. Smith as a result of the wrongful conduct alleged herein, together with 12% prejudgment interest.

(4)   Award Mr. Smith the costs of this action and reasonable attorney's fees; and

(6)   Award such other relief as the court deems just and reasonable.

Date:  June 20, 2023					Respectfully submitted,

						RAYMOND SMITH,

						By his attorneys,


						_____
						Mala M. Rafik
						BBO No. 638075
						Socorra A. DeCelle
						BBO No. 688197
						ROSENFELD & RAFIK, P.C.
						184 High Street, Suite 503
						Boston, MA 02110
						T: 617-723-7470
						F: 617-227-2843
						E:  mmr@rosenfeld.com

19